OPINION
{¶ 1} Plaintiff-appellant State of Ohio appeals the March 1, 2004 Judgment Entry entered by the Stark County Court of Common Pleas, which granted the Motion to Suppress filed by defendant-appellee Charles Leon Jones.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 20, 2004, the Stark County Grand Jury indicted appellee on one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree. Appellee entered a plea of not guilty to the charge at his arraignment on January 21, 2005. The matter proceeded through the discovery process. Appellee filed a Motion to Suppress, asserting his constitutional rights were violated as the officers who stopped him did not have reasonable, articuable facts upon which to do so. The trial court conducted a hearing on the motion on February 22, 2005.
 {¶ 3} The following evidence was adduced at the hearing. On October 30, 2004, Canton Police Officer Anthony Birone and his partner, Officer Lombardi, were working the midnight shift when they observed a vehicle stopped in the roadway of 12th
Street, S.E., between Albert and Warner Roads. Officer Birone testified this area of the city has a reputation for high drug activity. He further noted it was common knowledge within the police department there was a crack house on the 1200 block of 12th Street.
 {¶ 4} Officer Birone's attention was drawn to a grey jeep stopped in the middle of 12th Street, in which the driver and passenger appeared to be talking. Officer Birone testified he believed there was a drug transaction taking place inside the vehicle. He recalled when he drove the cruiser by, the driver of the vehicle, who was later identified as appellee, was startled at the sight of the cruiser and "took off". Officer Birone testified he and his partner "noticed that the jeep didn't have no rear illumination on the rear license plate so we used that as our probable cause to pull the jeep over in the 1300 block of Warner Road S.E." Tr. at 9.
 {¶ 5} When the officer asked appellee for his driver's license, registration, and proof of insurance, appellee advised the officer he did not have a driver's license on him. Officer Birone removed appellee from the vehicle as he initially believed he would arrest appellee for driving without a valid driver's license. Appellee provided the officers with his name, but could not remember his social security number. The officer ran the information through LEADS. The LEADS report indicated the vehicle was registered to a Charles Jones, but the date of birth of the registered owner did not coincide with appellee's age. Officer Birone ran a second LEADS report after appellee gave the officer his real name and date of birth. The second LEADS report indicated appellee did not have a valid driver's license. The Canton Police Department has a policy of impounding vehicles when the driver is found to be driving without a license. As part of that policy, the police department conducts an inventory search of the impounded vehicle. During this search, Officer Birone found a small white piece of rock, which he believed to be crack cocaine.
 {¶ 6} On cross-examination, Officer Birone conceded he had not seen appellee enter or exit the alleged crack house, or witness any transaction between appellee and his passenger. Officer Birone further conceded he did not witness any criminal activity while he observed appellee's vehicle stopped in the roadway, "other than stopped in the roadway violation." Tr. at 14. Officer Birone explained he and his partner stopped the vehicle, in part, because it was in the middle of the roadway and, in part, because the vehicle did not have rear illumination. Officer Birone acknowledged it was his intention to stop the vehicle regardless of any equipment violation. The officer affirmatively testified he did, in fact, observe the rear taillight violation prior to stopping the vehicle. On re-direct examination, Officer Birone maintained he did not stop the vehicle until he saw the rear taillight illumination violation.
 {¶ 7} After hearing Officer Birone's testimony as well as closing statements from counsel, the trial court granted appellee's Motion to Suppress. The trial court specifically found Officer Birone intended to stop appellee's vehicle before he knew of the license plate lack of illumination. Tr. at 31-32. The trial court further noted, "The arresting officers did not have any conduct which was indicative of criminal behavior. They didn't observe [appellee] outside the vehicle and there was not any indication of any activity in the alleged crack house on this evening. So there was not a reasonable suspicion of criminal activity about to occur or that had to occur. They did not witness any traffic violations prior to their making the stop." Tr. at 32. The State asked the trial court, "are you finding specifically that the officer did not notice the rear illumination violation prior to pulling over [appellee]?" Tr. at 33. The trial court responded, "Yes, because it's my recollection of the testimony, [defense counsel] asked the question: Did you intend to stop the vehicle before you knew of the license plate lack of illumination? And the officer's response was yes." Id. The State pressed for clarification. The trial court added, "What I'm hanging my hat on or what I'm specifically finding is that he intended to stop before he knew of the license plate lack of illumination violation." Tr. at 34-35.
 {¶ 8} The trial court memorialized its ruling via Judgment Entry filed March 1, 2005. At Finding of Fact #4, the trial court specifically found, "The patrol officers followed [appellee] and performed a traffic stop based upon the lack of illumination of the rear license plate." Thereafter, the trial courts concluded, "there was no evidence of any traffic violations, except that there may have been a parking violation, however, no testimony was elicited to support the parking violation. Officer Birone testified that he intended to stop [appellee's] vehicle before he knew of the rear license plate's lack of illumination."
 {¶ 9} It is from this Judgment Entry, the State appeals, raising as its sole assignment of error:
 {¶ 10} "I. THE TRIAL COURT ERRED IN SUSTAINING APPELLEE JONES' MOTION TO SUPPRESS."
 I {¶ 11} Herein, the State challenges the trial court's granting of appellee's Motion to Suppress.
 {¶ 12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19;State v. Klein (1991), 73 Ohio App.3d 486; State v. Guysinger(1993), 86 Ohio App.3d 592. Secondly, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor(1993), 85 Ohio App.3d 623, 627; and State v. Guysinger(1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657,134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 13} In the instant action, the State submits the trial court's Findings of Fact and Conclusions of Law are contradictory as the trial court found Officer Birone stopped appellee's vehicle "based upon the lack of illumination of the rear license plate", but concluded the officer did not have probable cause to stop the vehicle. The State asserts the trial court's rationale contradicts the Ohio Supreme Court's holding in Dayton v.Erickson (1996), 76 Ohio St.3d 3. We agree.
 {¶ 14} In Erickson, the Ohio Supreme Court held: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." Id. at syllabus.
 {¶ 15} In State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, unreported, this Court held any traffic violation, even a de minimis violation, would form a sufficient basis upon which to stop a vehicle. "The severity of the violation is not the determining factor as to whether probable cause existed for the stop." State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36, unreported. Rather, `* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *"' Id. at 5, citing McCormick at 10, citing Erickson at 11-12.
 {¶ 16} As noted in the Statement of the Case and Facts, supra, at the suppression hearing, the trial court specifically stated the officers did not observe any conduct which was indicative of criminal behavior. The trial court further noted the officers did not witness any traffic violation prior to making the stop of appellee's vehicle. However, it is axiomatic, a court speaks through its journal. State ex rel. Worcester v.Donnellon (1990), 49 Ohio St.3d 117. In its March 1, 2005 Judgment Entry, the trial court's Finding of Fact #4 indicates the officers performed the traffic stop of appellee's vehicle based upon the lack of illumination of the rear license plate. Nonetheless, the trial court subsequently concludes there was no evidence of any traffic violation. As a result, we find the Judgment Entry is inconsistent at worse, and ambiguous at best. Accordingly, we reverse and remand the matter to the trial court with instructions to specifically enter a finding regarding the veracity of Officer Birone's testimony he observed the rear license plate illumination violation prior to stopping the vehicle. If the trial court finds the officer's testimony was credible, the trial court is instructed to apply Erikson,
supra, find the initial stop of appellee's vehicle valid, and thereafter determine any other issues as to the legality of the stop, i.e., the validity of the inventory search. However, if the trial court determines Officer Birone's testimony was incredible, it may reenter its original order granting appellee's Motion to Suppress.
 {¶ 17} The State's sole assignment of error is sustained.
 {¶ 18} The Judgment of the Stark County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with the law and this opinion.
Hoffman, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Judgment of the Stark County Court of Common Pleas is reversed and remanded. Costs waived.